| | |
|---|---|
| ESTATE OF MARQUIS ALLEN HACKET, <br> LEXXUS HACKET, SAVANNAH HACKET, <br> and MARQUIS HACKET, JR., <br> <br> Plaintiffs, <br> <br> v. <br> <br> KIA CORPORATION, KIA AMERICA, INC., <br> HYUNDAI KIA AMERICA TECHNICAL <br> CENTER, INC., and FICTITIOUS <br> DEFENDANTS A-C, <br> <br> Defendants. | Case No: 2:25-cv-00304-PP |

# DEFENDANT KIA CORPORATION'S
# MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS FOR
# <u>LACK OF PERSONAL JURISDICTION UNDER FED. R. CIV. P. 12(b)(2)</u>

## TABLE OF CONTENTS

Page

I. INTRODUCTION ........................................................................................................... 1

II. FACTUAL BACKGROUND ......................................................................................... 2

III. ARGUMENT ................................................................................................................... 3

    A. This Court Lacks General Jurisdiction Over KC ..................................................... 4

    B. This Court Lacks Specific Jurisdiction Over KC ..................................................... 5

        1. KC has not purposefully availed itself of the benefits of Wisconsin as a forum. ........................................................................................... 5

        2. Plaintiffs' claims cannot arise out of or relate to KC's nonexistent contacts with Wisconsin. .............................................................. 12

        3. The exercise of personal jurisdiction over KC would not be reasonable. ............................................................................................... 12

IV. CONCLUSION ............................................................................................................. 13

## TABLE OF AUTHORITIES

Page

**CASES**

*Ark. Nursing Home Acquisition, LLC v. CFG Cmty. Bank*,
  460 F. Supp. 3d 621 (D. Md. 2020) ............................................................................... 12

*Asahi Metal Indus. Co. v. Superior Ct.*,
  480 U.S. 102 (1987) ................................................................................................. 8, 13

*B.D. ex rel. Myer v. Samsung SDI Co.*,
  91 F.4th 856 (7th Cir. 2024) ...................................................................................... 8, 9

*B.D. v. Samsung SDI Co.*,
  2024 WL 3897040 (S.D. Ind. July 17, 2024), *appeal docketed*, No. 24-2444
  (7th Cir. Aug. 20, 2024) .................................................................................................. 9

*BNSF Ry. Co. v. Tyrrell*,
  581 U.S. 402 (2017) ........................................................................................................ 4

*Bristol-Myers Squibb Co. v. Superior Ct.*,
  582 U.S. 255 (2017) ................................................................................................. 5, 12

*Burger King Corp. v. Rudzewicz*,
  471 U.S. 462 (1985) ................................................................................................. 5, 12

*Burlingham v. U.S. Dep't of Health & Hum. Servs.*,
  2023 WL 6390798 (E.D. Wis. Sept. 30, 2023) ............................................................... 4

*Chada v. First Specialty Ins. Corp.*,
  1998 WL 687261 (Wis. Ct. App. Oct. 6, 1998) ............................................................. 4

*Daimler AG v. Bauman*,
  571 U.S. 117 (2014) ................................................................................................... 1, 4

*Ditter v. Subaru Corp.*,
  2022 WL 889102 (D. Colo. Mar. 25, 2022) ................................................................... 8

*Felland v. Clifton*,
  682 F.3d 665 (7th Cir. 2012) .......................................................................................... 4

*Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*,
  592 U.S. 351 (2021) ............................................................................................... 1, 4, 7

*Glob. Imaging Acquisitions Grp., LLC v. Rubenstein*,
  107 F. Supp. 3d 961 (E.D. Wis. 2015) ........................................................................... 4

*Helicópteros Nacionales de Colombia, S.A. v. Hall*,
  466 U.S. 408 (1984) ...................................................................................................... 10

**Page**

*In re Kia Hyundai Vehicle Theft Litig.*,
  2024 WL 3469044 (C.D. Cal. July 5, 2024) .......................................................................... 7

*Insolia v. Philip Morris Inc.*,
  31 F. Supp. 2d 660 (W.D. Wis. 1998) ............................................................................10, 11

*J. McIntyre Machinery, Ltd. v. Nicastro*,
  564 U.S. 873 (2011) ................................................................................................... 5, 6, 8

*Lexington Ins. Co. v. Hotai Ins. Co.*,
  938 F.3d 874 (7th Cir. 2019) ........................................................................................ 5, 12

*Meier v. Wright Med. Tech., Inc.*,
  2015 WL 1486688 (W.D. Wis. Mar. 31, 2015) ...............................................................10, 11

*Mir v. Brod*,
  2022 WL 16639992 (E.D. Pa. Nov. 2, 2022), *aff'd*, 2024 WL 1877024 (3d Cir.
  Apr. 30, 2024) ................................................................................................................. 12

*Thornton v. Bayerische Motoren Werke AG*,
  439 F. Supp. 3d 1303 (N.D. Ala. 2020) .............................................................................. 8

*Versatile Plastics, Inc. v. Sknowbest! Inc.*,
  247 F. Supp. 2d 1098 (E.D. Wis. 2003) .............................................................................. 3

*Walden v. Fiore*,
  571 U.S. 277 (2014) ..................................................................................................... 5, 10

*World-Wide Volkswagen Corp. v. Woodson*,
  444 U.S. 286 (1980) ........................................................................................................ 13

I.      **INTRODUCTION**

Plaintiffs seek to reach across the world to draw Kia Corporation ("KC"), a South Korean corporation that does no business in Wisconsin, into a Wisconsin federal court. But this attempt runs headlong into the "limits imposed by federal due process" on the personal jurisdiction of federal courts. *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014). As the Supreme Court has warned, when analyzing questions of personal jurisdiction over foreign defendants, courts should pay "heed to the risks to international comity" posed by "expansive view[s]" of personal jurisdiction. *Id.* at 141. To establish personal jurisdiction, plaintiffs must prove that exercising jurisdiction over a foreign defendant comports with the "underlying values of . . . fairness" embedded in the Constitution's Due Process Clause. *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 360 n.2 (2021). Plaintiffs have not met and cannot meet their burden here, because under longstanding and binding precedents, none of KC's alleged contacts with Wisconsin is sufficient for this Court to exercise jurisdiction over KC in this case.[1]

KC has done nothing to purposefully avail itself of Wisconsin as a forum. KC designs and manufactures cars in South Korea, some of which it sells to an independent legal entity, Kia America, Inc. ("KA"), in South Korea. KC does no business whatsoever in Wisconsin. KC does not distribute, sell, or control KA's distribution or sale of any Kia-branded vehicles to Wisconsin dealers. Nor does KC conduct any advertising, marketing, or service activities in Wisconsin. KC does not even know whether any particular vehicle it designs or manufactures is destined for distribution in Wisconsin. Any eventual distribution by KA and sale by an independent Wisconsin dealer cannot create the Wisconsin ties required for a Wisconsin federal court to exercise personal

---

[1] Plaintiffs' claims against KC independently fail for all the same reasons set forth in Defendant Kia America, Inc.'s March 7, 2025 motion to dismiss for failure to state a claim. KC also hereby joins in and incorporates by reference that motion.

jurisdiction over KC.

This conclusion is not controversial. Just last week, another court faced with virtually identical facts dismissed a case against KC for lack of personal jurisdiction, finding no contacts with the forum state there—another state in which KC, like here, did no business. *See* Order Granting Defendant Kia Corporation's Motion to Dismiss Plaintiff's Complaint, *Dominguez-Maldonado v. Kia America, Inc. et al.*, Case No. A-24-900892-C (Nev. Clark Cnty. Eighth Jud. Dist. Ct. Apr. 17, 2025) ("*Dominguez* Order," attached as Exhibit A to the Declaration of Denean K. Sturino ("Sturino Decl.")). Like Plaintiffs here, plaintiffs in that case brought a lawsuit for wrongful death allegedly caused by a stolen Kia vehicle. Because this case presents virtually the exact same scenario, Plaintiffs' claims against KC should be dismissed with prejudice for lack of personal jurisdiction.

## II.     FACTUAL BACKGROUND

This case arises from a fatal car accident caused by a thief's reckless driving of a 2021 Kia Sportage, which had been stolen hours before the crash. (*See* Complaint ("Compl."), Dkt. 1.1, ¶¶ 173-74, 181-87.) Plaintiffs, the estate and survivors of Marquis Allen Hacket, allege that the theft that preceded the accident was caused by the purportedly defective design of the Sportage's theft-prevention systems, which they claim did not incorporate adequate anti-theft features. (*Id.* ¶¶ 62, 77, 81, 88, 90, 108, 190-92, 197, 205, 212, 223, 229.)

KC is a foreign corporation established under the laws of the Republic of Korea ("South Korea"), with its principal place of business in Seoul, South Korea. (Declaration of Byong Jun Jeon ("Jeon Decl.") ¶¶ 3-4.) KC does not conduct any business in Wisconsin. (*Id.* ¶ 5.) It does not have an agent for service of process in Wisconsin; does not own, use, lease, or possess any real estate in Wisconsin; does not maintain a place of business in Wisconsin; is not qualified, licensed, or authorized to do business in Wisconsin; does not have a bank account in Wisconsin; and does

2

not pay taxes in Wisconsin. (*Id.* ¶¶ 6-10.)

Rather, KC designs and manufactures Kia-branded vehicles in South Korea, some of which it sells to KA, an independent California-based subsidiary, in South Korea. (*Id.* ¶¶ 11-12.) KA accepts title of the vehicles in South Korea, and the vehicles become inventory of KA at the time of shipment in South Korea. (*Id.* ¶¶ 13-15.) KA distributes (sells) Kia-branded vehicles to independent dealers throughout the United States. (*Id.* ¶ 16.) KC does not distribute (sell) vehicles in the United States, through KA or otherwise. (*Id.* ¶¶ 16-17.) KC exercises no control over KA's distribution of Kia-branded vehicles in the United States, and KC exercised no control over KA's distribution of the 2021 Sportage at issue in this case. (*Id.* ¶ 18.) Nor does KC have a plan for the distribution of its products in Wisconsin. (*Id.* ¶ 19.) KC does not know whether any particular vehicle reaches Wisconsin, and KC does not expect any particular vehicle to reach Wisconsin. (*Id.* ¶¶ 20-21.) KC has no relationship, contractual or otherwise, with independent Kia dealers in Wisconsin, and KC does not authorize independent dealers to sell vehicles in Wisconsin. (*Id.* ¶ 22.) KC does not conduct solicitation or service activities in Wisconsin: KC does not market vehicles in Wisconsin; does not engage in any advertising or promotion of vehicles in Wisconsin; and does not operate any sales, service, or dealer network for any product, including for vehicles produced or distributed by KC or by other related corporate entities, in Wisconsin. (*Id.* ¶¶ 23-24.)

### III. <u>ARGUMENT</u>

"Once the issue of jurisdiction is raised, the plaintiff has the burden of demonstrating the existence of personal jurisdiction under the state's long-arm statute." *Versatile Plastics, Inc. v. Sknowbest! Inc.*, 247 F. Supp. 2d 1098, 1101 (E.D. Wis. 2003). Plaintiffs cannot establish the Court's personal jurisdiction over KC in this action.

A state court cannot "exercise personal jurisdiction over an out-of-state defendant" unless the defendant has "certain minimum contacts with the State such that the maintenance of the suit

3

does not offend traditional notions of fair play and substantial justice." *BNSF Ry. Co. v. Tyrrell*, 581 U.S. 402, 413 (2017) (citation omitted; cleaned up).[2] KC—a South Korean corporation that does no business in Wisconsin—is not "at home" in Wisconsin for purposes of general jurisdiction and has no relevant contacts with Wisconsin for purposes of specific jurisdiction. Because this Court cannot exercise jurisdiction over KC in this case, Plaintiffs' claims against KC cannot proceed in this Court.

### A. This Court Lacks General Jurisdiction Over KC

KC is not subject to general jurisdiction in Wisconsin—jurisdiction that extends to "any and all claims," regardless of the claims' connection to the state. *Burlingham v. U.S. Dep't of Health & Hum. Servs.*, 2023 WL 6390798, at *7 n.4 (E.D. Wis. Sept. 30, 2023) (quotation omitted). General jurisdiction arises where a corporation is "at home"—that is, where it has its "place of incorporation and principal place of business." *Daimler*, 571 U.S. at 118; *see also Ford*, 592 U.S. at 358. KC, a South Korean corporation with its principal place of business in South Korea (*see* Compl. ¶ 10), is not "at home" in Wisconsin under either criterion. It therefore is not subject to general jurisdiction in Wisconsin. *See Burlingham*, 2023 WL 6390798, at *13-14 (no general jurisdiction where plaintiff did not demonstrate that defendant was "at home" in Wisconsin).

---

[2] Because Wisconsin's long-arm statute "has been interpreted to go to the lengths of due process," "[o]nce the requirements of due process are satisfied, . . . there is little need to conduct an independent analysis under the specific terms of the Wisconsin long-arm statute." *Felland v. Clifton*, 682 F.3d 665, 678 (7th Cir. 2012). "The Wisconsin long-arm statute . . . has been interpreted to confer jurisdiction to the limits of due process, and thus courts usually focus only on whether due process authorizes personal jurisdiction and do not perform a separate inquiry under the long-arm statute." *Glob. Imaging Acquisitions Grp., LLC v. Rubenstein*, 107 F. Supp. 3d 961, 963-64 (E.D. Wis. 2015); *see also Chada v. First Specialty Ins. Corp.*, 1998 WL 687261, at *2 (Wis. Ct. App. Oct. 6, 1998) (affirming dismissal where the exercise of jurisdiction would be inconsistent with due process even though long-arm statute was satisfied).

4

## B. This Court Lacks Specific Jurisdiction Over KC

The Court also lacks specific jurisdiction over KC because Plaintiffs cannot demonstrate that KC has purposefully availed itself of Wisconsin as a forum or that their claims arise out of or relate to KC's contacts with Wisconsin.

A court may exercise specific jurisdiction over a nonresident defendant only if the defendant has purposefully availed itself of forum benefits and the controversy is related to or arises out of the defendant's contacts with the forum. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472, 475-76 (1985); *Walden v. Fiore*, 571 U.S. 277, 285 (2014); *Bristol-Myers Squibb Co. v. Superior Ct.*, 582 U.S. 255, 264 (2017) ("[F]or a court to exercise specific jurisdiction over a claim, there must be an affiliation between the forum and the underlying controversy, principally, an activity or an occurrence that takes place in the forum State.") (internal quotations and citation omitted; cleaned up). The exercise of jurisdiction over the defendant must also be reasonable. *See Burger King*, 471 U.S. at 478; *Lexington Ins. Co. v. Hotai Ins. Co.*, 938 F.3d 874, 884 n.7 (7th Cir. 2019). Plaintiffs cannot satisfy any of these elements.

### 1. KC has not purposefully availed itself of the benefits of Wisconsin as a forum.

To establish purposeful availment, Plaintiffs must demonstrate that KC "engaged in conduct purposefully directed at [Wisconsin]." *J. McIntyre Machinery, Ltd. v. Nicastro*, 564 U.S. 873, 886 (2011). In *Nicastro*, the Supreme Court rejected the argument that merely placing a consumer product in the stream of commerce is enough to establish purposeful availment, even when the seller knew the product might reach the forum state. *Id.* at 882. The Court held that New Jersey could not exercise specific jurisdiction over a foreign defendant simply because the defendant had contracted with a distributor to sell its products in the United States. While "[t]hese facts may reveal an intent to serve the U.S. market, . . . they do not show that [the defendant]

5

purposefully availed itself of the New Jersey market." *Id.* at 886. This conclusion was bolstered by the foreign manufacturer's lack of offices, property, and direct advertising in the forum state. *See id.*

Like the defendant in *Nicastro*, KC is a foreign company that designs and manufactures products abroad and sells some of them abroad to a legally distinct entity—KA—which then distributes these to independent retailers throughout the United States. (Jeon Decl. ¶¶ 11-12, 16.) While KC knows that KA serves the United States market generally, it exercises no control over KA's distribution of Kia-branded vehicles in the United States, does not have a plan for the distribution of its products in Wisconsin, and does not even know whether a particular vehicle it manufactures reaches Wisconsin. (*Id.* ¶¶ 18-20.) Plaintiffs incorrectly try to attribute conduct of other parties to KC, alleging that KC, "in conjunction with" KA, Hyundai America Technical Center, Inc. ("HATCI"), and the "Fictitious Defendants," is "responsible for the manufacture, design, distribution, service, and repair of Kia vehicles that are sold to American consumers." (Compl. ¶ 47.) But in fact, KC manufactures and designs vehicles in South Korea, some of which it sells to KA in South Korea, and KC is in no way involved with or responsible for the "distribution, service, and repair" of Kia-branded vehicles sold to Wisconsin consumers. (Jeon Decl. ¶¶ 11, 17, 24-25.) Binding Supreme Court precedent precludes exercising specific jurisdiction based on KC's mere sale of a car to a U.S. distributor in South Korea.

The Supreme Court's decision in *Ford* confirms that there is no jurisdiction over KC here. In *Ford*, the Court held that the states where two vehicle accidents had occurred could exercise specific personal jurisdiction over Ford for related product-liability claims. Ford, a U.S. corporation, conceded *it* had numerous direct, "systematic," and purposeful activities in those forum states, such as extensive in-state advertising and marketing of its vehicles in the forum

states, direct sales and shipment of its vehicles to dealers in those states, maintenance and servicing of the vehicles by its dealers in those states, and distribution of replacement parts to its own dealers and independent body shops in those states. 592 U.S. at 365.

None of these facts applies to KC. KC is a foreign manufacturer that conducts no business activities in Wisconsin. (Jeon Decl. ¶¶ 3-5, 11.) Contrary to Plaintiffs' allegation that "solicitation or service activities were being carried out on behalf of [KC] in [Wisconsin]" "at the time of injury" (Compl. ¶ 14), KC did not advertise any vehicles to Wisconsin residents, did not direct sales and shipments of its vehicles to Wisconsin dealers, did not service vehicles through forum-state dealers, and did not operate a sales, service, or dealer network in Wisconsin. (Jeon Decl. ¶¶ 17, 19, 23-25.) In fact, KC had no relationship, contractual or otherwise, with independent Kia dealers in Wisconsin. (*Id.* ¶ 22.) And KC exercised no control over KA's distribution of Kia-branded vehicles, nor did KC control distribution of the vehicle at issue here. (*Id.* ¶ 18.)

On a nearly identical set of facts less than a week ago, another court found that KC had not purposefully availed itself of the benefits of another state in which it did no business and dismissed all claims against KC with prejudice. *See* Sturino Decl. Ex. A, *Dominguez* Order (no personal jurisdiction over KC because "KC conducts no business in Nevada, does not market or advertise in Nevada, . . . does not operate any sales or service network for any product in Nevada," and "exercises no control over KA's distribution of Kia-branded vehicles in the United States."). And indeed, courts across the country routinely decline to find purposeful availment as to foreign automobile manufacturers on materially identical facts, too. *See In re Kia Hyundai Vehicle Theft Litig.*, 2024 WL 3469044, at *6 (C.D. Cal. July 5, 2024) (no personal jurisdiction over South Korean parent manufacturers where they did not distribute or sell vehicles in California or direct marketing campaigns in California even though domestic subsidiaries were California-based);

7

*Ditter v. Subaru Corp.*, 2022 WL 889102, at *5-6 (D. Colo. Mar. 25, 2022) (no personal jurisdiction over Japanese manufacturer even though it and its American subsidiary distributor "place[d] automobiles into the stream of commerce by targeting Colorado through a network of automobile dealers" because uncontested evidence showed manufacturer performed no activity in Colorado); *Thornton v. Bayerische Motoren Werke AG*, 439 F. Supp. 3d 1303, 1311 (N.D. Ala. 2020) ("BMW AG's target of the broader United States market, the notices of recall it sent to customers in Alabama, and [plaintiff's] unilateral decision to purchase the vehicle in Alabama fail[ed] to demonstrate BMW AG's connection to Alabama in a meaningful way" to support finding of specific jurisdiction) (cleaned up). This case is no different. Because purposeful availment of the forum state's market is entirely absent, the Court lacks specific jurisdiction over KC.

Plaintiffs may nonetheless argue that the exercise of specific jurisdiction is appropriate because KC manufactured a vehicle that it placed in the stream of commerce knowing it could or would end up in Wisconsin. But this allegation cannot support a finding of purposeful availment. *See Nicastro*, 564 U.S. at 886; *Asahi Metal Indus. Co. v. Superior Ct.*, 480 U.S. 102, 112 (1987). As the Seventh Circuit has explained, a defendant's "'awareness that the stream of commerce may or will sweep the product into the forum State does not convert the mere act of placing the product into the stream into an act purposefully directed toward the forum State.'" *B.D. ex rel. Myer v. Samsung SDI Co.*, 91 F.4th 856, 861 (7th Cir. 2024) (quoting *Asahi Metal*, 480 U.S. at 112). Rather, a defendant must have "delivered its product[s] into the stream of commerce in the U.S. market with the expectation that the [products] would be purchased in the forum state." *Id.* at 862-63. The inquiry into the defendant's "expectation" examines whether the defendant "know[s] [the products] reached" the forum state, "expects that its [products] would reach" the forum state,

and takes "efforts . . . to control distribution of its [products]." *Id.* at 863. Applying this stream-of-commerce test, a court in the Seventh Circuit recently dismissed a lawsuit against a South Korean battery manufacturer. *B.D. v. Samsung SDI Co.*, 2024 WL 3897040, at *6 (S.D. Ind. July 17, 2024), *appeal docketed*, No. 24-2444 (7th Cir. Aug. 20, 2024). The court explained that the defendant did not expect the products at issue to reach the forum state, as it "never directed shipments" to the forum state, "never authorized a third-party vendor to sell" the products in the forum state, and "does not advertise or service" the products in the forum state. *Id.* at *5.

These principles foreclose Plaintiffs' efforts to bring KC into this case, and the same outcome should obtain. KC does not deliver vehicles "into the stream of commerce *in the U.S. market*." *Samsung*, 91 F.4th at 861 (emphasis added). Rather, KC manufactures vehicles in South Korea and sells some of them to KA in South Korea, where title passes to KA. (Jeon Decl. ¶¶ 11, 14-15.) KC does not know whether any particular vehicle reaches Wisconsin. (*Id.* ¶ 20.) Nor does KC even expect any particular vehicle to reach Wisconsin. (*Id.* ¶ 21.) Like the battery manufacturer in *Samsung*, KC does not direct shipment of its products to Wisconsin, does not authorize independent dealers to sell products in Wisconsin, and does not advertise or service products in Wisconsin. (*Id.* ¶¶ 17-18, 22-25.) The distribution of Kia-branded vehicles to dealers in particular states is handled entirely by KA, and KC neither controls KA's distribution of vehicles nor has a plan for the distribution of vehicles. (*Id.* ¶¶ 16, 18-19.) In short, KC does not deliver vehicles into the stream of commerce in the U.S. market, let alone with the expectation they will be purchased in Wisconsin. KC has not purposefully availed itself of Wisconsin, and this Court therefore lacks jurisdiction over KC.

Nor can this Court exercise jurisdiction over KC merely because KA, KC's California-based subsidiary, allegedly has contacts with Wisconsin. As the Supreme Court has made clear,

the "unilateral activity of another party or a third person is not an appropriate consideration when determining whether a defendant has sufficient contacts with a forum State to justify an assertion of jurisdiction." *Helicópteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 417 (1984); *see also Walden*, 571 U.S. at 286 ("[A] defendant's relationship with a . . . third party, standing alone, is an insufficient basis for jurisdiction."). The only relevant contacts are those created by KC, not KA.

While an agent's contacts with the forum state can sometimes be imputed to the principal for personal-jurisdiction purposes, "[b]y itself, the mere existence of a parent-subsidiary relationship is insufficient to establish that a principal-agent relationship exists between the two entities." *Insolia v. Philip Morris Inc.*, 31 F. Supp. 2d 660, 671 (W.D. Wis. 1998); *see Meier v. Wright Med. Tech., Inc.*, 2015 WL 1486688, at *8 (W.D. Wis. Mar. 31, 2015) (granting motion to dismiss for lack of personal jurisdiction where plaintiff failed to demonstrate agency relationship between out-of-state defendant and "any subsidiary that manufactured the [product]"). To determine whether an agency relationship exists, Wisconsin courts consider whether "there has been a manifestation by the principal to the agent that the agent may act on his account, and consent by the agent so to act." *Insolia*, 31 F. Supp. 2d at 671 (quotation omitted). Where no express manifestation exists, courts consider "1) acts by the agent or principal justifying belief in the agency; 2) knowledge of these acts by the party sought to be held responsible as a principal or as an agent; [and] 3) reliance on the existence of the relationship by plaintiffs, consistent with ordinary care and prudence." *Id.*

Plaintiffs cannot satisfy any of these requirements. KC has not expressly manifested to KA that KA may act on KC's behalf. (Jeon Decl. ¶ 26.) Rather, KC and KA are separate and independent legal entities that pursue entirely different lines of business: KC designs and

manufactures Kia-branded vehicles in South Korea and sells some of those vehicles to KA in South Korea, and KA distributes Kia-branded vehicles to independent dealers throughout the United States. (*Id.* ¶¶ 11, 16.) Plaintiffs do not allege that KC or KA have taken any acts that could justify belief in an agency relationship, nor do Plaintiffs allege their reliance on the existence of such a relationship. In short, KA is not an agent of KC. (*Id.* ¶ 26.) KA's contacts with Wisconsin therefore cannot support personal jurisdiction over KC. *See Insolia*, 31 F. Supp. 2d at 671 (no agency-based jurisdiction where no explicit agency theory existed between defendant and the third party and plaintiff failed to adduce evidence of actual or apparent agency); *see also Meier*, 2015 WL 1486688, at *8 (no agency-based jurisdiction where "[plaintiff] failed to offer any evidence or argument demonstrating that an agency relationship existed between [the parent and manufacturer]").

Plaintiffs also allege ties between KC and the other named out-of-forum defendant, HATCI, *see* Compl. ¶¶ 43-47, 143, 163, 171 n.27, 219, but no agency relationship exists between KC and HATCI, either. HATCI and KC are entirely independent entities. (Decl. of Ric Willard, Dkt. 13-1, ¶ 19; Jeon Decl. ¶ 27.) They have no ownership interest in each other, do not direct each other's operations or contract negotiations, are not subject to each other's control, and have no express agency agreement. (Jeon Decl. ¶ 27.) KC does not have the power to alter HATCI's legal relations or the duty to act primarily for HATCI's benefit. (*Id.* ¶ 28.) HATCI does not hold itself out as KC's agent. (Decl. of Ric Willard, Dkt. 13-1, ¶ 20.) As with KA, Plaintiffs do not allege that KC or HATCI have taken any acts that could justify belief in an agency relationship, nor do Plaintiffs allege their reliance on the existence of such a relationship. Thus, HATCI's conduct cannot support this Court's personal jurisdiction over KC. Indeed, no connection between HATCI and KC could establish personal jurisdiction over KC in any event, since this Court also

lacks personal jurisdiction over HATCI. (*See* HATCI's Memorandum of Law in Support of Its Motion to Dismiss, Dkt. 13.)

### 2. Plaintiffs' claims cannot arise out of or relate to KC's nonexistent contacts with Wisconsin.

To establish specific jurisdiction, Plaintiffs must also show that their claims are related to or arise out of KC's contacts with Wisconsin. *See Bristol-Myers*, 582 U.S. at 265. Because KC has no relevant contacts with Wisconsin whatsoever, Plaintiffs cannot make this showing. Other courts that have analyzed this issue have come to the same conclusion, and there is no reason for a different result here. *See, e.g.*, Sturino Decl. Ex. A, *Dominguez* Order ("Because Plaintiff has not identified any KC contacts with Nevada, he has furthermore not shown that the claims in this action arise from or relate to any KC contacts with Nevada"); *Mir v. Brod*, 2022 WL 16639992, at *29 (E.D. Pa. Nov. 2, 2022) ("[S]ince . . . [d]efendant[] ha[s] not purposefully availed [itself] by reaching out or doing business in Pennsylvania, Plaintiff cannot show that his claims arise out of or relate to any such contacts."), *aff'd*, 2024 WL 1877024 (3d Cir. Apr. 30, 2024); *Ark. Nursing Home Acquisition, LLC v. CFG Cmty. Bank*, 460 F. Supp. 3d 621, 640-41 (D. Md. 2020) (claims did not arise from Maryland contacts where defendant "in no way availed itself to Maryland").

### 3. The exercise of personal jurisdiction over KC would not be reasonable.

In addition to the first two prongs of the test for specific jurisdiction, the Court should decline to exercise jurisdiction under the third prong because the exercise of jurisdiction would not be reasonable. *See Burger King*, 471 U.S. at 478; *Lexington*, 938 F.3d at 884 n.7. To determine whether personal jurisdiction would be reasonable, courts consider "the burden on the defendant," "the forum State's interest in adjudicating the dispute," "the plaintiff's interest in obtaining convenient and effective relief," "the interstate judicial system's interest in obtaining the most efficient resolution of controversies," and "the shared interest of the several States in furthering

fundamental substantive social policies." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980). The Supreme Court has recognized that "the unique burdens placed upon one who must defend oneself in a foreign legal system should have significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders." *Asahi Metal*, 480 U.S. at 114.

Exercising personal jurisdiction over KC would not be reasonable. In *Asahi*, the Court found the burden on a similarly situated foreign defendant was "severe" where it had to "traverse the distance between [its] headquarters in Japan and [California state court]" and "submit its dispute . . . to a foreign nation's judicial system." *Id.* So, too, here. KC is a foreign corporation, with its principal place of business in South Korea. (Jeon Decl. ¶¶ 3-4.) It has no relevant contacts with, and does no business within, Wisconsin. (*Id.* ¶¶ 5-10, 17-25.) Dragging KC into litigation in a jurisdiction under these circumstances would impose an unnecessary and substantial burden on KC, whose employees would be required to travel over 6,000 miles from South Korea to defend this suit, in a foreign language and foreign legal system. (*Id.* ¶ 29; *see* Sturino Decl. Ex. A, *Dominguez* Order (exercising personal jurisdiction over KC in Nevada would pose a substantial burden to KC).) Plaintiffs also do not contend that they will be unable to obtain effective relief without KC in this action, nor do they identify any interest of Wisconsin (as the forum jurisdiction) in forcing KC to defend a lawsuit in Wisconsin when it has zero relevant contacts with the jurisdiction.

## IV.     CONCLUSION

For the foregoing reasons and those set forth in Defendant KA's Memorandum of Law in Support of its Motion to Dismiss, this Court should dismiss Plaintiffs' Complaint with prejudice against KC.

DATED: April 23, 2025			Respectfully submitted,

			KIA CORPORATION

			By: */s/ Denean K. Sturino*
				One of its Attorneys

				Denean K. Sturino (SBN 1029532)
				Amanda J. Walsh (SBN 1096543)
				O'Hagan Meyer LLC
				One East Wacker Drive, Suite 3400
				Chicago, IL 60601
				Telephone: (312) 422-6100
				Facsimile: (312) 422-6110
				dsturino@ohaganmeyer.com
				awalsh@ohaganmeyer.com

				O'MELVENY & MYERS LLP
				Sabrina Strong, Esq. (*pro hac vice forthcoming*)
				Jonathan Schneller, Esq. (*pro hac vice forthcoming*)
				400 South Hope Street, Suite 1900
				Los Angeles, CA 90071
				Telephone: (213) 430-6000
				Facsimile: (213) 430-6407
				sstrong@omm.com
				jschneller@omm.com

				*Attorneys for Defendant*
				Kia Corporation